759 So.2d 950 (2000)
STATE of Louisiana
v.
Troy SNAVELY.
No. 99-KA-1223.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 2000.
*953 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant D.A. Ellen S. Fantaci, Assistant D.A. Walter G. Amstutz, Assistant D.A., Gretna, LA, for Plaintiff-Appellee.
Arcenious F. Armond, Jr., Gretna, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and JAMES L. CANNELLA.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Troy A. Snavely, with possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A (count one), and possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1 (count two). Prior to trial, defense counsel filed several motions, one of which was a motion to suppress evidence. Following the denial of this motion, the matter proceeded to trial on count one before a twelve person jury. At the conclusion of the proceedings, the jury found the defendant guilty of possession with intent to distribute cocaine. The trial judge subsequently sentenced the defendant to twenty years at hard labor, without benefit of probation or suspension of sentence.
Subsequent to the resolution of the cocaine charge, the defendant reurged his motion to suppress evidence relating to the firearm charge. The trial judge denied that motion, and the defendant thereafter pled guilty to possession of a firearm by a convicted felon as set forth in count two of the bill of information. The defendant *954 entered this plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the trial court's ruling on the motion to suppress. In accordance with the plea agreement, the judge sentenced the defendant to ten years at hard labor to run concurrently with the sentence imposed on count one.
Subsequent to the imposition of sentence on count one, the state filed a bill of information seeking to have the defendant adjudicated and sentenced as a third felony offender pursuant to LSA-R.S. 15:529.1. After the defendant admitted his status as a second felony offender, the trial judge vacated the original sentence on count one and imposed an enhanced sentence of thirty-five years at hard labor to run concurrently with the sentence imposed on count two. The defendant thereafter appealed.
On original appeal, the attorney appointed for the defendant filed an Anders[1] brief along with a motion to withdraw. This court denied the motion to withdraw, remanded the case to be supplemented with the transcript from the plea proceedings, and instructed appellate counsel to file a brief addressing the denial of the motion to suppress and the validity of the defendant's guilty plea. Appellate counsel filed a supplemental brief which failed to address the defendant's Crosby plea. In response, this court remanded the matter to the district court with instruction to appoint new appellate counsel to represent the defendant in his appeal. The trial judge complied with this order and appointed new counsel; however, the defendant then retained his own attorney who enrolled as counsel of record. The record was subsequently lodged in this court, and appellate counsel filed a brief on the defendant's behalf, asserting six assignments of errors. It is in this posture that the case is presently before our court.

FACTS
Deputies Edwin Kline and Jeffrey Lehrmann, employed with the Jefferson Parish Sheriffs Office, were working together on June 5, 1998. That afternoon, an anonymous individual paged Deputy Kline. When he called the number left on the pager, the person told him that a white male named "Troy," with blond hair and who drove a silver Taurus, was going to make a crack cocaine delivery to 1620 Hesiod Street.
Based on this information, the officers proceeded to 1620 Hesiod Street. When they arrived, a silver Taurus was already parked in front of the residence. The officers then observed the defendant, a white male with blond hair, exit the residence, walk towards the Taurus and open the vehicle's door. The officers, who were in uniform, decided to approach the defendant to investigate. Deputy Kline testified that as he and Deputy Lehrmann walked towards the defendant, he "backed up in a nervous manner, turned around, started heading back towards the house," and dropped a clear plastic bag.
Deputy Lehrmann retrieved the plastic bag, which contained numerous off-white rock-like substances that field tested positive for the presence of cocaine. While Officer Lehrmann secured the narcotics, Deputy Kline pursued the defendant. Following a brief struggle, the officers arrested the defendant. A search incident to that arrest revealed a loaded handgun in the defendant's right front pants pocket.
In addition to the testimony of the police officers, the state also introduced the testimony of Tom Angelica of the Jefferson Parish Sheriffs Office Crime Lab. After being accepted as an expert in the field of drug chemistry, Mr. Angelica testified that in connection with this case, he analyzed pieces of off-white material in a plastic bag. His testing revealed that the evidence in the plastic bag was cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, the defendant contends that he was deprived of *955 his right of confrontation because the trial court erroneously ruled the state was not required to disclose the identity of the person who provided the information leading to his arrest.
The record, in the present case, supports the conclusion that the tip was provided by an anonymous source and not a confidential informant. At trial, Deputy Kline testified he had given his pager number to many people for the purpose of receiving anonymous tips such as the one received in this case. He further testified that he did not know the anonymous source's identity, and that anonymous sources frequently will not reveal their names. In addition, the police report which was produced to the defendant, indicated that the deputies were given the information by "an anonymous source." Given these circumstances, we find that the trial judge did not err in denying the defendant's motion to disclose the informant's identity.
We further note that even if the tipster had been a confidential informant, disclosure of that person's identity was not required, given the fact that the informant merely supplied information and did not participate in the transaction leading to the defendant's arrest. See State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630.
The defendant next asserts that the trial judge improperly sustained the state's objection when defense counsel asked Deputy Kline whether additional drug activity had been transpiring at the Hesiod residence that day. However, the transcript reflects that defense counsel voluntarily withdrew the question and thus, this argument presents nothing for review.
The defendant further asserts that the exclusion of evidence that other narcotics activity was occurring at the residence violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that the state has a duty to disclose evidence favorable to the defendant when it is material to the defendant's guilt or punishment. In the present case, even if additional drug activity was occurring at the residence, there is nothing in the record to indicate that the state withheld this information from the defense. In fact, the record reflects that the defense was fully aware of other narcotics activity at the residence. The police report that was produced to the defendant revealed that narcotics arrests had been made at that residence in the past. Moreover, at the suppression hearing, defense counsel asked Deputy Kline about other "activity" that had occurred at the residence. Given the fact that the defendant had knowledge of other possible narcotics activity at the residence, we find that no Brady violation occurred.
Based on the foregoing discussion, we find that the arguments raised by the defendant in this first assigned error to be without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, the defendant asserts that the trial judge improperly admitted into evidence the gun seized after his arrest. He also contends that the judge improperly allowed testimony about the gun at trial. According to the defendant, the gun and the testimony surrounding its recovery constituted impermissible evidence of other crimes.
At trial, Deputies Kline and Lehrmann testified that they found a handgun in the defendant's front right pocket after he was arrested. After the officers' testimony, the gun was admitted into evidence. In the present case, the defendant failed to object at trial to either the admission of the gun into evidence or to any testimony about the gun. Thus, this claim was not properly preserved for review. LSA-C.Cr.P. art. 841(A). However, in Assignment of Error Number Five, the defendant asserts that he was *956 denied effective assistance of counsel because of trial counsel's failure to object to the introduction of the gun as well as to testimony about the gun. Therefore, in order to address these allegations of ineffectiveness, it is necessary to address this issue.
Generally, evidence of other crimes is inadmissible at trial because of the substantial risk of grave prejudice to the defendant. State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070. While our Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404 B(1). Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Curtis, 99-45 (La.App. 5 Cir. 7/27/99), 739 So.2d 931.
In State v. Brewington, 601 So.2d 656, 657 (La.1992), the Louisiana Supreme Court stated:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised [citations omitted].
In the present case, the evidence of the discovery of the gun constituted an integral part of the crime of possession with intent to distribute cocaine. The evidence was used merely to complete the story of the crime on trial and allow the state to accurately present its case. For these reasons, we find that the gun and any testimony surrounding its discovery were properly admitted into evidence.

ASSIGNMENT OF ERROR NUMBER THREE
On appeal, the defendant also argues that the trial court erred in denying the motion to suppress evidence. The defendant contends that the cocaine and the gun should have been suppressed because the police officers acted without probable cause when they detained him. He further challenges the credibility of Deputy Kline's testimony at the suppression hearing.
The Fourth Amendment and Article I, Section V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to a police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Louisiana Supreme Court adopted the Hodari D. definition of an "actual stop" in State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on reh'g, 626 So.2d 720 (La.1993). However, because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, the Tucker court held that a "seizure" also occurs when an "actual stop" of the individual is "imminent." The Louisiana Supreme Court explained as follows:
In determining whether an "actual stop" of an individual is "imminent," we find that the focus must be on the degree of certainty that the individual will be "actually *957 stopped" as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent." Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, supra at 712-713.
Furthermore, when evidence is abandoned or otherwise disposed of prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Short, 95-742 (La.App. 5 Cir. 1/30/96), 668 So.2d 1240.
At the suppression hearing, Deputy Kline testified that on June 5, 1998, he first observed the defendant exiting a residence at 1620 Hesiod Street in Metairie. The defendant then proceeded towards a silver Taurus. When the defendant observed the two deputies, he became nervous, turned around, dropped a clear plastic bag containing cocaine to the ground, and then tried to walk back towards the residence. Deputy Kline approached the defendant, and after a brief struggle, he and his partner succeeded in placing the defendant under arrest. Deputy Kline then searched the defendant and found a gun in his right front pocket. After listening to this testimony, the trial judge denied the defendant's motion to suppress. We find no error in the trial court's ruling.
As can be seen by the testimony at the suppression hearing as well as the testimony at trial, the defendant had not been actually stopped at the time he discarded the plastic bag which contained cocaine. Nor do we find that an actual stop was imminent. The defendant was not surrounded by the police. Rather, only two officers approached the defendant to investigate. The officers did not have their guns drawn, and the record reflects that the area was one of high crime. Since the defendant discarded the cocaine prior to any unlawful intrusion, we find that the narcotics were lawfully seized.
After the defendant abandoned the cocaine, the police had probable cause to arrest him for a narcotics violation. Once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible to remove any weapons from the defendant and to prevent evidence from being destroyed. State v. Short, supra. Thus, the police officers were justified in seizing the gun discovered during the search which was executed pursuant to the defendant's lawful arrest.
In this assignment, the defendant also complains about the trial judge's credibility determinations. Credibility of witnesses is best determined by the trial judge and is not to be upset on appeal unless the trial judge abuses his or her discretion. State v. Riley, 98-830 (La.App. 5 Cir. 3/10/99), 731 So.2d 409, writ denied, 99-1301 (La.10/15/99), 748 So.2d 464, writ *958 denied, 99-1324 (La.10/15/99), 748 So.2d 465.
Based on the foregoing discussion, we find that the trial judge did not err in denying the defendant's motion to suppress the evidence.

ASSIGNMENT OF ERROR NUMBER FOUR
The defendant also challenges the sufficiency of the evidence used to convict him of possession with intent to distribute cocaine. He specifically claims that the state failed to prove that he had the specific intent to distribute cocaine.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In order to prove guilt by circumstantial evidence, the state must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. This is not separate from the Jackson standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, supra; State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57.
The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. LSA-R.S. 40:967 A; State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). The determination of specific criminal intent is a question of fact and may be inferred from the circumstances and from the actions of the defendant. State v. Lewis, 97-160 (La. App. 5 Cir. 7/29/97), 698 So.2d 456, writ denied, 97-2381 (La.3/27/98), 716 So.2d 881.
The Louisiana Supreme Court has recognized a series of factors that may give rise to a reasonable inference that a defendant had the specific intent to distribute a controlled dangerous substance. State v. Hearold, 603 So.2d 731 (La.1992); State v. House, 325 So.2d 222 (La.1975). In State v. Hearold, supra at 735, the Supreme Court stated that these factors include:
(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
However, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Hearold, supra; State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
In the present case, the bag the defendant discarded contained forty-two rocks of crack cocaine, as well as some fragments of crack cocaine. Sergeant Bruce Harrison of the Jefferson Parish Sheriffs Office, an expert in the use, packaging, distribution and value of narcotics, testified *959 that the manner in which the individual pieces of crack were broken up was indicative of preparation for retail sale. Sergeant Harrison estimated that the individual pieces of crack cocaine in the bag would sell for ten dollars a piece. He testified further that if he encountered an individual with forty or more rocks of crack cocaine, he would believe that the individual intended to distribute the crack cocaine. The officer acknowledged that only two of the rocks were packaged in separate plastic wrappers. Sergeant Harrison explained that wrapping a few of the rocks would be inconsistent with individual use, since it would not be reasonable for a user to have wrapped the rocks, only to be forced to unwrap them before use. On cross-examination, Sergeant Harrison acknowledged that no money was found on the defendant's person. He maintained, however, that loose rocks, as well as wrapped rocks of crack cocaine, are commonly sold on the street.
When questioned about the significance of the lack of paraphernalia on the defendant's person, Sergeant Harrison stated that hard core crack users always carry their crack pipes with them. According to Sergeant Harrison, the fact the defendant did not have a crack pipe on his person indicated that he was not a crack user.
Sergeant Harrison additionally testified that crack users usually purchase between one and five rocks at a time. One of the reasons crack users purchase only a few rocks at a time is because they have limited funds since they buy crack as soon as they obtain enough money. Another reason, according to the officer, is because users are familiar with the consequences of a possession of cocaine conviction versus a possession with intent to distribute cocaine conviction. Finally, Sergeant Harrison testified that individuals who are selling drugs are more inclined to carry weapons than those individuals who are simply using drugs.
We find the foregoing evidence sufficient to establish the requisite intent on the part of the defendant to distribute cocaine. Accordingly, the defendant's conviction for possession with intent to distribute cocaine was constitutionally sufficient under the Jackson standard.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assigned error, the defendant asserts that he was denied effective assistance of counsel. Although claims of ineffective assistance of counsel are more appropriately addressed through an application for post conviction relief, we will address the defendant's allegations since the record contains sufficient evidence to decide the claims. State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La.1989).
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La.4/4/94), 637 So.2d 450, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055.
The defendant first complains that defense counsel was ineffective because he failed to object to the introduction of the gun into evidence, as well as to testimony about the gun. In Assignment of Error Number Two, we concluded that such evidence was properly admitted at trial. *960 Therefore, it cannot be said that counsel's failure to object amounted to deficient performance.
The defendant also complains that he was denied effective assistance of counsel because defense counsel referred to the gun in closing arguments. In the state's closing argument, the prosecutor had put the gun in his pocket and demonstrated for the jury how easily it could slip in and out of a pocket. In response, defense counsel told the jury that he had placed the gun in his pocket earlier, and that the prosecutor had seen him do it. Defense counsel said that because the gun easily could be placed in a pocket, he had decided against arguing that the gun would not fit in a pocket. These remarks could be considered to be trial strategy. As stated in Strickland, 466 U.S. at 689, 104 S.Ct. 2052 "the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case." Moreover, given the fact that the gun was properly admitted, any reference to the gun in closing argument would not amount to deficient performance.
Based on the foregoing discussion, we find that the defendant failed to prove that trial counsel's performance was deficient and that the deficiency prejudiced him. Accordingly, we reject the defendant's claims of ineffectiveness.

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment, the defendant seeks to reserve a right to file a supplemental brief because there are conflicts between some minute entries and because the record is unclear whether the State produced documents in support of the multiple offender bill of information.
Regarding the conflicts in the record, the defendant specifically complains that there are discrepancies between the minute entries of January 25, 1999, November 4, 1998, and November 10, 1998 that indicate the defendant pled guilty to the multiple bill and "one transcript" that indicates the defendant pled not guilty. A review of the record, however, discloses no conflicts in this regard.
The transcript and minute entry for November 10, 1998 both reflect that the defendant waived a reading of the multiple offender bill of information that alleged him to be a third felony offender, and he denied the allegations therein. However, on January 25, 1999, the defendant admitted he was a second felony offender, and, after advising the defendant of his rights, the trial judge accepted the defendant's admission as a second felony offender. Therefore, the minute entries and the transcripts all indicate that the defendant initially denied the allegations in the multiple bill, but subsequently admitted to being a second felony offender.
The defendant also asserts that more investigation is required into whether the state produced the required documents relating to the multiple offender bill of information. In his brief, appellate counsel asserts that "Those documents have not been obtained to date based on the fact that the record has been on appeal and unavailable to undersigned counsel to date." We find counsel's allegation that the record was unavailable to be without merit. According to the records of the Clerk of this Court, the records from the first appeal, as well as the instant appeal, were in this Court, available to appellate counsel since November of 1999.
As shown by the foregoing discussion, we find no merit to the potential problems raised by appellate counsel. Accordingly, there is no need for a supplemental brief to be filed.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975).
*961 Such a review reveals that the trial judge failed to completely comply with the provisions of LSA-C.Cr.P. art. 556.1 when accepting the defendant's guilty plea to the crime of felon in possession of a firearm. First, the trial judge failed to inform the defendant of the mandatory minimum fine of $1,000.00. The trial judge further failed to inform the defendant that the sentence must be served without benefit of parole, probation or suspension of sentence, as provided by LSA-R.S. 14:95.1. However, these errors are harmless given the fact that the trial judge failed to impose a fine and did not include the "without benefit" provisions in the sentence. See State v. Curtis, 98-1283 (La.App. 5 Cir. 6/1/99), 738 So.2d 657, writ denied, 99-1950 (La.12/17/99), 751 So.2d 873; State v. Stamp, 98-193 (La.App. 5 Cir. 7/28/98), 718 So.2d 531.
We further note that the defendant's sentences are illegally lenient in several respects. The sentence on the firearm charge is illegally lenient because the trial judge failed to require that the sentence be served without benefit of probation, parole, or suspension of sentence, and because the trial judge failed to impose the mandatory fine of $1,000.00, as required by LSA-R.S. 14:95.1(B). The sentence imposed pursuant to the multiple offender bill of information is illegally lenient insofar as the trial judge failed to stipulate that it be served without benefit of probation or suspension of sentence[2] as required by LSA-R.S. 15:529.1(G). In addition, the trial judge failed to specify that the first five years of the defendant's enhanced sentence be served without benefit of parole, as required by the underlying offense.[3]
Despite the court's failure to specify that the defendant's sentences be served without benefit of probation or suspension, we find that there was substantial compliance with those sentencing directives because the trial court did not affirmatively suspend any portion of the sentence or grant any probationary period. State v. Williams, 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14. With regard to the other aspects of the sentence which are illegally lenient, we are precluded from correcting those errors on appeal based on the jurisprudence in effect at the time of the defendant's sentencing. State v. Harrell, 98-671 (La.App. 5 Cir. 1/26/99), 727 So.2d 1231.
For the reasons set forth herein, the defendant's convictions and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] While the commitment reflects that the sentence was imposed without benefit of probation or suspension of sentence, the transcript does not so reflect. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La.1983).
[3] LSA-R.S. 40:967 B(4)(b) provides that whoever is convicted of possession with intent to distribute cocaine shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being served without benefit of parole, probation, or suspension of sentence.