760 So.2d 522 (2000)
STATE of Louisiana
v.
Eric FLAGG (Sentenced as "Eric L. Flagg").
No. 99-KA-1004.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
*524 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Frank Brindisi, Martin Belanger, Jr., Assistant District Attorneys, 24th Judicial District, Parish of Jefferson, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Edward R. Greenlee, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and JAMES L. CANNELLA.
GOTHARD, Judge.
In this criminal matter defendant, Eric Flagg, appeals his conviction and sentence. For reasons that follow, we affirm.
The record shows that defendant was charged by bill of information with possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A), a charge to which the defendant pled not guilty at arraignment. The defendant filed a motion to suppress, which the trial judge denied. On the day of trial, after a colloquy with the trial judge, the defendant waived his right to a jury trial and was tried by the bench. He was convicted of the lesser and included offense of possession of cocaine, LSA-R.S. 40:967(C), and was subsequently sentenced to serve three years at hard labor.
On the same day defendant was sentenced, the State filed an habitual offender bill of information which alleged the defendant was a second felony offender. Defendant stipulated to the allegations therein. The trial court vacated the original sentence and imposed an enhanced sentence of three years at hard labor. A timely motion for appeal was granted.
At trial, the State presented the testimony of Jefferson Parish Sheriff's Officer David Roddy. Deputy Roddy testified that on the night of June 20, 1998, he and his partner in the Street Crimes Division *525 of the Sheriff's Office, Deputy Beevers, were patrolling certain areas of the Westbank about which complaints had been made. At approximately 10:30 p.m., the officers were proceeding down Rue Louis Phillipe near its intersection with Waters Street. They approached the intersection at a rapid speed. As they turned onto Waters Street, Deputy Roddy observed several black males, including the defendant, congregating in an open field next to a house. According to Deputy Roddy, the defendant was twirling a white T-shirt in one hand, and also appeared to be engaging in a hand-to-hand transaction with one of the other men in the group. As the police unit turned the corner, the defendant started running. Deputy Roddy exited the car, identified himself as a police officer, and ordered the defendant to stop. The defendant continued running, and Deputy Roddy pursued the defendant as he entered the house at 2093 Waters Street.
In the hallway of the house, the defendant threw down the shirt and a bag containing 16 rocks of an off-white substance. The defendant stopped running when he reached a bedroom in the house. Deputy Roddy then arrested the defendant, handcuffed him, and advised him of his Miranda rights.[1] A search incident to the arrest revealed $115.00 in cash in the defendant's pants pocket. The off-white rocks field-tested positive for the presence of cocaine. The scientific analysis report indicated that the rocks weighed 2.7 grams and contained cocaine.
After Deputy Roddy's testimony, the State rested. The defense called three witnesses; the defendant, his mother, and Deputy Beevers, whose testimony substantially corroborated his partner's testimony. Deputy Beevers additionally testified that he was the driver of the police unit that night, and said that he did not see the hand-to-hand transaction because he was concentrating on driving. He said that when Deputy Roddy alerted him to the possible hand-to-hand transaction, he sped up, drove across the lot, and Roddy jumped out of the car to pursue the defendant. While Deputy Roddy chased the defendant, Deputy Beevers interviewed and patted down the other men. He found no contraband on their persons, and the men did not have any money in their hands. Finally, Deputy Roddy said he did not enter the residence at 2093 Waters Street.
The defendant denied that he was chased by the police. He stated that he lived at 2020 Waters Street, about a block from 2093 Waters Street. According to the defendant, he went to 2093 Waters Street after work to visit his friend, Rod Terragano, who lives there. The defendant said that he and a few other men were standing in front of the residence drinking beer. He went inside the residence to the restroom, and then heard the police entering the residence. He further testified that he was removed from the residence by one of the officers, and arrested outside. The defendant denied he was in the empty lot when the police arrived, stated that no one ran into the residence, and said he had "no idea" why the officers would claim he threw down cocaine. The defendant admitted two previous drug convictions involving marijuana.
The defense and the State stipulated that if Rod Terragano were to testify at trial, his testimony would be the same as it was at the suppression hearing held the previous day. At the suppression hearing, Terragano testified that he was in the kitchen of his residence that night when the police arrived. He said he did not see the defendant enter the house, but surmised that the defendant must have come in to use the restroom. Terragano said that by the time he actually saw Flagg, he was under arrest outside of the residence. According to Terragano, he and his uncle were taken out of the residence by the police and one officer entered the house *526 thereafter. Terragano denied that the defendant was chased into the house by the police, and he said that the defendant walked outside of the house voluntarily. Finally, Terragano admitted he had prior convictions of theft and burglary.
The defendant's mother testified that she and her son resided together. She said she saw her son around 5:00 p.m. when he came home from work, and that he left shortly thereafter. Ms. Flagg further testified that she had never seen her son with cocaine, and she had never seen cocaine in her home.
In brief to this court, the defendant assigns one error. He argues the trial court erred when it denied the Motion to Suppress the evidence. In support of that argument, he contends that Deputy Roddy's entry into the Waters Street residence was illegal because neither probable cause nor exigent circumstances existed to justify either the officer's pursuit of him into a private residence or the warrantless arrest inside of the residence. According to the defendant, the contraband he discarded inside of the residence was illegally seized, and should have been suppressed as the product of the officer's unlawful entry.[2] The State responds that the seizure of the cocaine was justified because the defendant abandoned the contraband before he was "seized" by Deputy Roddy.
The Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A search or seizure conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62, 65 (La.1993); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 817, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. When the constitutionality of a warrantless search or seizure is at issue on a motion to suppress, the State bears the burden of proving that the search or seizure, was justified under one of the exceptions to the warrant requirement. State v. Diaz-Rubio, 615 So.2d 1124, 1127 (La.App. 5 Cir.1993), writ denied, 93-1010 (La.9/30/94), 642 So.2d 866.
Police entry into a residence in "hot pursuit" and under "exigent circumstances" are exceptions to the warrant rule. United States v. Santana, 427 U.S. 38 at 42, 96 S.Ct. 2406 at 2409, 49 L.Ed.2d 300 (1976); Warden v. Hayden, 387 U.S. 294 at 298, 87 S.Ct. 1642 at 1645, 18 L.Ed.2d 782 (1967); State v. Hathaway, 411 So.2d 1074, 1078 (La.1982); State v. Franklin, 353 So.2d 1315, 1319 (La.1977); State v. Diaz-Rubio, supra. However, the police must also have probable cause, in order to justify the entry. Id.
The State contends that the seizure of the cocaine was justified by the officer's reasonable suspicion that ripened into probable cause. An investigatory stop, authorized by LSA-C.Cr.P. art. 215.1 and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be supported by reasonable suspicion of criminal activity. Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference. State v. Belton, supra; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 70, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. In making *527 a brief investigatory stop on less than probable cause to arrest, the police must have a particularized and objective basis for suspecting the particular individual who has been stopped of criminal activity. State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Duckett, 99-314 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
The reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, supra. Additionally, in determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence produced at the hearing on the motion to suppress, but may also consider pertinent evidence given at the trial. State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200.
On the record before us, we find that reasonable suspicion to justify an investigatory stop existed when Deputy Roddy observed the defendant engage in what the officer believed was a hand-to-hand transaction. An officer's experience, and knowledge of recent criminal patterns and the knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102. Deputy Roddy had 7½ years of experience with the Jefferson Parish Sheriff's Office, and 1½ years of experience as a Street Crimes Officer. According to Deputy Roddy, these officers do not respond to general calls, but handle street-level activities, such as dealing with narcotics activity on the street and executing outstanding warrants.
Likewise, the reputation of a neighborhood as a high-crime area is also an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061. On the night of the incident, the officers were in an unmarked police unit, patrolling the area, which was one of high crime. The officers focused on the field at the corner of Waters and Rue Louis Phillipe because several complaints had been received about that location. According to Deputy Beevers, although they were not responding to a particular complaint, they were patrolling the area because of ongoing complaints, and because "it's been known that they congregate in that open field."
Deputy Roddy said they were about 20 yards away from the men when he saw the defendant appear to hand something to one of the other men standing in the field, which was lit by the street light on the corner and the spotlight on the rear of the nearby house. According to Deputy Roddy, when the defendant saw the car, he had a startled expression on his face, which the officer described as "the face of somebody who was ... in shock of seeing the police." The defendant then started running toward 2093 Waters, and Deputy Beevers pulled into the driveway of the residence. Deputy Roddy exited the car, identified himself, and ordered the defendant to stop. As the defendant continued running, the officer pursued the defendant inside where he discarded the bag containing the rocks of cocaine.
This experienced officer's observation of an apparent hand-to-hand transaction that occurred at night in a high crime area, which was the subject of on-going complaints, and the defendant's startled expression at the sight of police officers, coalesced to give rise to reasonable suspicion of criminal activity to support an investigatory stop. See, State v. Duckett, supra.
Once the defendant fled, then the reasonable suspicion ripened into *528 probable cause to arrest. An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213; State v. Moreno, supra, 619 So.2d at 66. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1184; State v. Williams, supra, 735 So.2d at 72.
Furtive actions and flight at the approach of law officers may be proper factors in the decision to make an arrest if coupled with specific knowledge on the part of the officers relating the suspect to the evidence of crime. State v. Davis, 407 So.2d 666, 669 (La.1981); see also, State v. Nicholas, 397 So.2d 1308, 1313 (La.1981) (flight is a factor to be considered in ascertaining the existence of probable cause). Recently, in Illinois v. Wardlow, ___ U.S. ___, ___, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), the United States Supreme Court observed that "[h]eadlong flight wherever it occursis the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."
However, we recognize that flight alone is not sufficient to justify an arrest. Even where flight reasonably appears designed to avoid apprehension, probable cause does not arise unless it is combined with other information upon which officers are entitled to rely which would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit. State v. Talbert, 449 So.2d 446 (La.1984).
In State v. Young, 93-0414 (La.App. 4 Cir. 8/17/94), 642 So.2d 255, the Fourth Circuit found that probable cause to arrest existed when officers on routine patrol in an unmarked car in the Desire Housing Project observed the defendant and another man engage in a hand-to-hand transaction in which the defendant gave the man an object and received money from him in return. When the police yelled, "Police, freeze," both men fled. The officers ultimately apprehended and arrested the defendant. In determining these circumstances supported a finding of probable cause, the court stated, "common sense told the officers the defendant was selling drugs just as common sense dictates the conclusion that the officers had probable cause to arrest him." Id. at 259. See also, State v. Shelton, 96-2322 (La.App. 4 Cir. 10/30/96), 682 So.2d 338.
In the instant case, we find the officers reasonably believed defendant was involved in a drug transaction and accordingly, we believe probable cause existed for an arrest.
However, that finding does not end our inquiry. As noted above, probable case alone does not justify the entry into a residence. State v. Hathaway, supra, 411 at 1079. We conclude that the officer's entry into the residence was justified by the "hot pursuit" or the "exigent circumstances" exception to the warrant requirement.
Exigent circumstances are exceptional circumstances, which when combined with probable cause, justify entry into an area that without those circumstances, would be illegal. State v. Hathaway, supra, 411 at 1079. This doctrine recognizes situations in which the time-consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary. United States v. Kreimes, 649 F.2d 1185, 1192 (1981). Examples of such circumstances are the escape of the defendant, avoidance of a possible violent confrontation that could cause injury to *529 others, and the destruction of evidence. State v. Hathaway, supra; see also, State v. Diaz-Rubio, supra, 615 at 1127. The mobility of a vehicle[3] and hot pursuit[4] have also been held to be exigent circumstances. The exigent circumstances doctrine applies equally to warrantless seizures of persons and property because the same privacy interests are implicated. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); Kreimes, supra.
In the instant case, we find that the officer's entry was justified by the exigent circumstance of the possible escape of the defendant or the destruction of contraband. Further, we find that the officer's entry was justified because he was in hot pursuit of the defendant. In United States v. Santana, supra, the United States Supreme Court held that the "hot pursuit" exception justified the entry of officers into the defendant's residence. Officers had probable cause to believe that the defendant was involved in the distribution of heroin because an undercover officer purchased heroin from an individual who said that the defendant had the money from the narcotics deal. Immediately after the controlled buy, officers observed the defendant standing on her front porch. When they identified themselves as police officers, the defendant retreated inside of her home and officers followed inside. Because officers had probable cause to arrest and because the officers were in hot pursuit, the United States Supreme Court held that the warrantless entry, and subsequent arrest, was lawful. According to the Court, "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." Id. 427 U.S. at 43, 96 S.Ct. at 2410.
Because we have determined that probable cause existed to arrest the defendant before he entered the residence, it then follows that the defendant could not thwart the lawful arrest by fleeing into the Waters Street residence. See also, State v. Hathaway, supra.
Accordingly, we find that Deputy Roddy's entry into the Waters Street residence was lawful. Thus, the officer could lawfully seize the contraband as it was abandoned by the defendant. For the above reasons, we find no merit in this assignment of error.
For the foregoing reasons, the conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] As mentioned by the defendant in his brief, even though the defendant did not reside at the 2093 Waters Street residence, the defendant has standing as a person "adversely affected" to contest the legality of the entry of the officer into the residence and the subsequent seizure of the evidence. La. Const. Art. I, § 5 (1974); State v. Talbert, 449 So.2d 446 (La.1984), fn. 1.
[3] Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
[4] United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300.