786 So.2d 798 (2001)
STATE of Louisiana,
v.
Michael L. HARRIS, Jr.
No. 00-KA-1930.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*800 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Quentin P. Kelly, Assistant District Attorneys, Gretna, LA, Counsel for State.
Karen G. Arena, River Ridge, LA, Counsel for defendant.
Court composed of Judges DUFRESNE, McMANUS, and JAMES C. GULOTTA, Pro Tempore.
McMANUS, Judge.
In this Crosby appeal, Defendant Harris appeals the trial judge's denial of his motion to suppress a gun seized from his person, possession of the weapon being an essential element of the crime charged. Harris further argues that the trial judge imposed a condition on his incarceration of which he had not been informed prior to a guilty plea to the weapons charge. We affirm both the ruling on the motion and Harris's sentence.

STATEMENT OF THE CASE
On June 22, 2000, Defendant, Michael J. Harris, Jr., was charged, by bill of information, with being a convicted felon in possession of a firearm. LSA-R.S. 14:95.1. The predicate offense was a conviction for aggravated battery that occurred in Orleans Parish (No. 412-773 "J"). LSA-R.S. 14:34.
Defendant was arraigned and pled not guilty on June 26, 2000.
On July 12, 2000, Defendant filed a Motion for a Preliminary Examination and a Motion to Suppress the Evidence. A hearing was held on both motions on October 31, 2000. The judge found probable cause and also refused to suppress the evidence. On the same day, the Defendant withdrew his not guilty plea and entered a Crosby plea, after a Boykin hearing. State v. Crosby, 338 So.2d 584 (La.1976).
On October 31, 2000, the court also sentenced the Defendant to serve ten years at hard labor, with credit for time served but without benefit of parole, probation or suspension of sentence.
On November 21, 2000, an appeal motion was granted.

FACTS
On June 5, 2000, at approximately 6:45 p.m., Officer Jeremy Baye of the Jefferson Parish Sheriffs Office received a call from the police dispatcher. The dispatcher told Officer Baye that the manager of the Taco Bell restaurant at 929 Manhattan Boulevard in Gretna, Louisiana, had called in a complaint. According to the dispatcher, *801 the manager of the restaurant reported that a black male had been causing a disturbance in the restaurant and that the individual had a gun in his back pocket.[1] Officer Baye and his partner, Officer Weber, proceeded to the location of the complaint and were advised, in route, that the suspect was wearing a white tank shirt and grayish-blue jeans. The shirt hung over the pants pocket. The officers arrived at the restaurant and saw a black male exiting the restaurant who met the description given by the manager. According to Officer Baye, as a safety precaution, the officers had their guns in hand and pointed at the suspect as they exited their police unit. The officers were in uniform. They told the suspect to get on the ground and keep his hands visible. The suspect responded by running away. He ran directly behind the restaurant to the area of a bowling alley, located at 929 Manhattan Boulevard. With Officer Baye in the police unit and Officer Weber on foot, they chased the suspect. The suspect jumped over the hood of the vehicle and continued to run. He was apprehended shortly thereafter. He was ordered to the ground, handcuffed, and frisked for weapons. A Walther P 38.9 mm handgun was found in his back pocket, under his shirt. The gun contained six rounds of ammunition in the clip and a bullet in the magazine. The officers arrested the suspect for resisting arrest by flight and simple criminal damage, advised him of his rights and transported him to police headquarters for booking. At the police station, a criminal background search was conducted and the suspect was found to have an aggravated battery conviction. He was booked with being a convicted felon in possession of a firearm.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the motion to suppress was improvidently denied in that his firearm was seized without probable cause. He reasons that he was unlawfully arrested and that the evidence was seized illegally; therefore, the evidence should have been suppressed.
The State responds, however, that the seizure was not illegal because the arrest and search incident thereto resulted from probable cause. The State reasons that the police initially had reasonable suspicion for an investigatory stop and pat down of the Defendant for weapons. When the Defendant ran from the police, the reasonable suspicion developed into probable cause for the arrest and search incident thereto.
In the alternative, the State argues that even if probable cause did not exist for the arrest and search, the search was, nonetheless legal. The State contends that the police had reasonable suspicion for an investigatory stop, and that during the stop an inevitable discovery of the firearm would have occurred.
The Fourth Amendment and Article I § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 526, writ denied, XXXX-XXXX, 786 So.2d 117 (La.3/9/01); State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 956, writ denied, XXXX-XXXX, 785 So.2d 840 (La.2/16/01). In an effort to discourage police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution *802 against the citizen. State v. Tucker, 92-2093 and 92-2130 (La.5/24/93), 626 So.2d 707, 710; State v. Duckett, 99-314 (La.App. 5 Cir. 7/29/99), 740 So.2d 227, 230. Provided it is supported by the evidence, a trial judge's ruling on the motion to suppress the evidence is entitled to deference. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1182.
In this case, the trial judge found the officer's show of force was reasonable under the circumstances. The trial judge gave the following reasons for his conclusion that the evidence was admissible and for refusing to grant the motion to suppress:
THE COURT:
Alright. In context with this Hearing, these facts are not in dispute. A call was received by the Dispatcher from the Manager of this business establishment, complaining that a Black male in the place was in possession of a firearm. The Officer, then [sic] Deputy, responding to the call, drove to the business location and observed a Black male fitting the same description, as indicated by the Dispatcher's report. Next the Officer, Officer Baye, proceeded to conduct himself as any Officer would under the circumstances. Once he determined that the description matched, he proceeded to act as if the defendant at the time, suspect if you will, was in fact in possession of a firearm; and proceeded to deploy procedures to determine whether or not that was correct. The rest of the circumstances are such that there was flight. Upon being subdued, Mr. Harris was found to be in possession of a firearm. At all times, at all times the Sheriff's Office acted reasonably under the circumstances.
Ultimately, the State bears the burden to show that a warrantless search falls within one of the exceptions to the rule that a warrantless search is, per se, unconstitutional. State v. Flagg, 760 So.2d at 526.
In State v. Fisher, 720 So.2d at 1182-1183, citing United States v. Watson, 953 F.2d 895, 897 (5th Cir.1992), the Louisiana Supreme Court discussed the three-tiered analysis of interaction between citizens and police occurring under the Fourth Amendment:
At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts.
At the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. (Citations and footnote omitted)
"Reasonable suspicion" is required for an investigatory stop. State v. Bearden, 449 So.2d 1109, 1115 (La.App. 5 Cir. 1984). Reasonable suspicion must be determined by the facts and circumstances of each case, and is to be gauged by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. State v. Jernigan, 377 So.2d 1222, 1224 (La. 1979).
"Probable cause," which is needed for a full custodial arrest, is more than *803 a "reasonable suspicion." State v. Fisher, 720 So.2d at 1183. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. State v. Flagg, 760 So.2d at 528. In such cases the determination of the existence of probable cause must be judged by the probabilities and practical considerations of everyday life on which average police officers can be expected to act. Id. at 528.
In certain cases, reasonable suspicion may ripen into probable cause depending upon the circumstances of the case. See, State v. Flagg, supra, at 527-528. Furtive actions and flight at the approach of law enforcement officers may, when coupled with other specific knowledge, give rise to the existence of probable cause. Id. at 528.
In this case we must determine the nature of the encounter between the Defendant and police. More particularly, we must determine at what point the Defendant was "seized" within the meaning the Fourth Amendment. We are aided in this determination by this Court's decision in State v. Snavely, 759 So.2d at 956-957, wherein the distinction between an "actual stop" and an "imminent stop" is discussed:
The Fourth Amendment and Article I, Section V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, an individual is not `seized' within the meaning of the Fourth Amendment until that individual either submits to police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Louisiana Supreme Court adopted the Hodari D definition of an `actual stop' in State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on reh'g 626 So.2d 720 (La.1993). However, because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, the Tucker court held that a `seizure' also occurs when an `actual stop' of the individual is `imminent.' The Louisiana Supreme Court explained as follows:
In determining whether an `actual stop' of an individual is `imminent' we find that the facts must be on the degree of certainty that the individual will be `actually stopped' as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.' Although nonexhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an `actual stop' of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers in the encounter. State v. Tucker, supra at 712-713
The record supports a finding that when the officers initially encountered the suspect, they knew he had caused a disturbance at the Taco Bell and that he was in *804 possession of a firearm. These facts would have given rise to "reasonable suspicion" that the suspect had been or was about to be engaged in criminal activity and would have warranted an investigatory stop. It likewise justified the officers in approaching the scene with armed caution for their own safety and that of persons in the vicinity.
When the uniformed police arrived at the Taco Bell and exited their vehicle with guns drawn, they observed a suspect who met the description given by the restaurant manager. The suspect began to run. Hence, no "actual stop" occurred at this time because there was no physical contact by the officers nor did the suspect submit to the officers' show of authority. Additionally, an actual stop was not "imminent" at this time. Although the officers approached with their guns drawn, the suspect was not surrounded by the police. Moreover, he was several feet from the officers during their initial approach. It was night, and there were numerous locations to which he could flee. It was not certain that Harris would submit to detention when he was first met at the Taco Bell, and he did manage to flee on foot to a location nearby before he was apprehended. And when the suspect fled, this factor, added to the facts that he had caused a disturbance at the restaurant and that he was armed, elevated the officers' suspicions to such a degree that probable cause existed for his arrest. State v. Flagg, 760 So.2d at 528. Thus, the arrest was legal and the search incident thereto was likewise legal. State v. Mitt, 99-1177 (La.App. 5 Cir. 2/16/00), 758 So.2d 873, 875, fn. 2; State v. Snavely, 759 So.2d at 957.
The trial court's ruling on the motion to suppress the evidence was correct, and therefore, this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant alleges his guilty plea is invalid because the trial judge did not advise him that his sentence was to be served without benefit of parole, probation or suspension of sentence.
The State responds that this issue cannot be raised by a Crosby appeal. In the alternative, the State contends the allegation is factually untrue.
In State v. Crosby, 338 So.2d 584, 588 (La.1976), the Louisiana Supreme Court held that an appeal following a plea agreement may only seek review of nonjurisdictional defects and assignments of error specifically reserved at the time of the guilty plea and upon which the plea is conditioned.
In this case, the sentence qualification of which Defendant complains is not a non-jurisdictional defect. Additionally, the alleged sentencing error was not reserved for review. As the State points out, no objection was presented regarding the sentence and no motion for reconsideration of sentence was filed. We also note that the Defendant never moved to vacate the sentence. Hence, there was no indication in the district court that the Defendant was in any way dissatisfied with the sentence imposed.
As such, this assignment of error, raised for the first time on appeal, presents nothing for us to review.
Even assuming for the sake of argument that this is an issue properly presented for review, we nonetheless find that Defendant's position is not supported by the record. At the time of sentencing the following dialogue occurred:
Mr. Kelly:

*805 Judge, that sentence needs to be without benefit of probation, parole or suspension of sentence.
The Court:
Okay. And as indicated in the Statute; that sentence will be without the benefit of probation, parole or suspended sentence. Do you understand that, sir?
The Defendant:
Yes, sir; that's the whole ten?
The Court:
I beg your pardon?
The Defendant:
That's the whole ten flat?
The Court:
Yes, it is. Yes, it is.
The Defendant:
Oh, alright.
The Court:
Is that clear?
The Defendant:
Yea.
It is apparent from a review of the record that the trial court did advise Defendant that his sentence was to be served without benefits of parole, probation or suspension of sentence.
This argument is groundless.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
Therefore, for the above reasons, we affirm the trial judge's ruling on the motion to suppress, and affirm the sentence as imposed.
AFFIRMED.
NOTES
[1] On cross-examination, the Officer did state that his report of the incident didn't indicate any complaint of a disturbance, that the complaint had been made simply to report the presence of an armed individual. He testified that this omission had been an "error."