822 So.2d 796 (2002)
STATE of Louisiana
v.
Kelly NELSON.
No. 02-KA-65.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
*797 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Thomas S. Block, Assistant District Attorneys, Gretna, LA, for the State.
Philip E. O'Neil, Gretna, LA, for defendant-appellant.
Court composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
McMANUS, Judge.
In this matter, we affirm the trial court's denial of the motion to suppress the statement by the defendant and affirm the defendant's conviction of possession of cocaine.

STATEMENT OF THE CASE
On May 24, 2001, a bill of information was filed charging defendant, Kelly Nelson, with possession of cocaine. She pled not guilty on June 28, 2001. On August 29, 2001 a motion to suppress evidence and statements was denied by the trial court. Subsequently, a jury trial was held on September 25, 2001 and she was found guilty as charged. She was sentenced on October 10, 2001 to ten years at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals alleging four assignments of error: (1) that the trial court erred in denying the motion to suppress her statements because the Miranda warnings were incomplete and cannot serve as a basis for admission *798 of the alleged statements; (2) that the trial court erred in denying the motion to suppress evidence that informant's tip was insufficient to establish probable cause; (3) that the trial court erred in permitting the opinion of Detective Russell Lloyd concerning the amount of cocaine relative to personal use and street price of cocaine without first qualifying him as an expert in his specialized field or expertise; and (4) that the trial court permitted the assistant district attorney to improperly question the defendant on cross-examination concerning alleged other crimes in violation of La.C.Cr.P. art. 770.

FACTS
On May 14, 2001, Detective Scott Zemlik and other officers received information on drug activity in the Bon Soir Motel, Room 59 in Westwego, Louisiana involving a suspect named "Tony" and a Pontiac Grand Am rental car. Detective Zemlik and his partner went to the motel and observed a car meeting the description. During the investigation it was learned that Kelly Nelson, the defendant, had rented the car and Room 59. Detective Zemlik then learned that the car would be en route to the McDonald's restaurant at 1212 Stumpf Boulevard in Gretna, Louisiana with large amounts of cocaine. Detective Zemlik and other officers set up surveillance at the McDonalds and waited for the car. At approximately 4:02 p.m. the Grand Am arrived in the parking lot. The officers approached the car, identified themselves and had the occupants exit the car. The driver of the vehicle was Thomas Roberson. Detective Zemlik found $1121 in cash on his person. Detective Lloyd, supervisor of the narcotics division for the Gretna Police Department, went to the passenger side of the car and removed the defendant, Kelly Nelson, from the car. He spoke to her, advised her of the ongoing investigation and conducted a pat-down search but did not find any weapons. He then advised her of her rights and she stated she understood them. Detective Lloyd noted that the defendant was nervous and crying. He told her a female officer would come down to conduct a thorough search. The defendant then removed a large bag of off-white rocks from her bra and handed it to Detective Lloyd. She told Detective Lloyd the following statement: "He told me to hold this. I don't know what's going on." Mr. Roberson and the defendant were then placed under arrest and taken to the Gretna Police Department. After arriving at the police department, Mr. Roberson and the defendant were again advised of their rights. Neither made any statements once they arrived at the police station.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying the motion to suppress the statement she made to Detective Lloyd after he advised her of her rights because the Miranda warnings were incomplete and cannot serve as the basis for the admissibility of the alleged statements of the defendant. Defendant contends Detective Lloyd failed to advise her that she could terminate the questioning at any time.
Before a confession or inculpatory statement made during a custodial interrogation may be introduced into evidence, the state must prove beyond a reasonable doubt that the defendant was first advised of her Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Thucos, 390 So.2d 1281 *799 (La.1980); State v. Bentley, 96-795 (La. App. 5 Cir. 3/25/97), 692 So.2d 1207. The Supreme Court in Miranda held that the person in custody must be informed that he has a right to remain silent, that any statement he does make may be used against him as evidence, and that he has a right to the presence of an attorney, either retained or appointed. Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
Defendant argues that she was not advised of her right to terminate questioning after she began making a statement. This is not one of the specified rights set forth in Miranda. The right to terminate questioning is a right that must be observed; however, it is not specifically included in the rights that must be verbally advised. There is no authority for defendant's argument that she must be advised of the right to terminate questioning, beyond advice of the right against self-incrimination under Miranda.
At the hearing on the motion to suppress evidence and statements, Detective Lloyd testified that he told defendant about the narcotics investigation and advised defendant of her rights immediately after he removed her from the vehicle. He testified that he did so from memory, telling her that she need not make any statement, that she had the right to remain silent, that anything she said might, could and would be used against her in a court of law, that if she could not afford an attorney, the court would obtain an attorney to represent and advise her, and that she had the right to have her attorney or an appointed attorney present at the time of any questioning or the giving of any statements. Defendant stated that she understood those rights. In the instant case, Detective Lloyd advised defendant of all of her rights pursuant to Miranda.
In addition, the record in this case reflects that once defendant arrived at the police station, she refused to make any more statements. Thus, she exercised her right to terminate questioning, which the officer observed.
Based on the foregoing, we conclude that the statements made by the defendant to the detective occurred after defendant had been fully advised of her constitutional rights. Therefore, the trial judge did not err in denying defendant's motion to suppress her statements to Detective Lloyd.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the trial court erred in denying her motion to suppress evidence because the informant's tip was insufficient to establish probable cause for the arrest. Specifically, defendant contends that the state failed to establish probable cause because the informant did not inform Detective Zemlik how the information was obtained. The defendant further argues that neither Detective Lloyd nor Detective Zemlik was informed that defendant had been or was committing any offense prior to or at the time of her arrest.
The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La. App. 5 Cir. 3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, but may also consider pertinent evidence given at the trial. State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 923, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
*800 In State v. Harris, 00-1930 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, this Court set forth the law regarding reasonable suspicion and probable cause:
The Fourth Amendment and Article I § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 526, writ denied, XXXX-XXXX, 786 So.2d 117 (La.3/9/01); State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 956, writ denied, XXXX-XXXX, 785 So.2d 840 (La.2/16/01). In an effort to discourage police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. State v. Tucker, 92-2093 and 92-2130 (La.5/24/93), 626 So.2d 707, 710; State v. Duckett, 99-314 (La.App. 5 Cir. 7/29/99), 740 So.2d 227, 230.
Ultimately, the State bears the burden to show that a warrantless search falls within one of the exceptions to the rule that a warrantless search is, per se, unconstitutional. State v. Flagg, 760 So.2d at 526.
In State v. Fisher, 720 So.2d at 1182-1183, citing United States v. Watson, 953 F.2d 895, 897 (5th Cir.1992), the Louisiana Supreme Court discussed the three-tiered analysis of interaction between citizens and police occurring under the Fourth Amendment:
At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts.
At the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. (Citations and footnote omitted)
"Reasonable suspicion" is required for an investigatory stop. State v. Bearden, 449 So.2d 1109, 1115 (La.App. 5 Cir. 1984). Reasonable suspicion must be determined by the facts and circumstances of each case, and is to be gauged by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. State v. Jernigan, 377 So.2d 1222, 1224 (La.1979).
"Probable cause," which is needed for a full custodial arrest, is more than a "reasonable suspicion." State v. Fisher, 720 So.2d at 1183. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. State v. Flagg, 760 So.2d at 528. In such cases the determination of the existence of probable cause must be judged by the probabilities and practical considerations of everyday life on which average police officers can be expected to act. Id. at 528.
In certain cases, reasonable suspicion may ripen into probable cause depending upon the circumstances of the case. See, State v. Flagg, supra, at 527-528. Furtive actions and flight at the approach *801 of law enforcement officers may, when coupled with other specific knowledge, give rise to the existence of probable cause. Id. at 528.
In the instant case, we must determine the nature of the encounter between the Defendant and police. More particularly, we must determine at what point the Defendant was "seized" within the meaning the Fourth Amendment. We are aided in this determination by this Court's decision in State v. Snavely, 759 So.2d at 956-957, wherein the distinction between an "actual stop" and an "imminent stop" is discussed:
The Fourth Amendment and Article I, Section V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, an individual is not `seized' within the meaning of the Fourth Amendment until that individual either submits to police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Louisiana Supreme Court adopted the Hodari D definition of an `actual stop' in State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on reh'g, 626 So.2d 720 (La.1993). However, because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, the Tucker court held that a `seizure' also occurs when an `actual stop' of the individual is `imminent.' The Louisiana Supreme Court explained as follows:
In determining whether an `actual stop' of an individual is `imminent' we find that the facts must be on the degree of certainty that the individual will be `actually stopped' as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.' Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an `actual stop' of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers in the encounter. State v. Tucker, supra at 712-713.
State v. Harris, 786 So.2d at 801-803.
An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Jernigan, 377 So.2d 1222, 1224 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980); State v. Miskel, 95-584 (La. App. 5 Cir. 1/30/96), 668 So.2d 1299. The Supreme Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983). However, an unverified tip alone *802 might not be sufficient to establish reasonable cause for the stop of the defendant. The Supreme Court has held that such a tip, when corroborated by independent police work, may exhibit sufficient indicia of reliability to justify stopping the suspects. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).
We must next determine at what point in time the defendant was arrested after the initial stop, i.e., whether the arrest occurred after or before she produced the drugs. In State v. Watson, 99-1448 (La. App. 4 Cir. 8/23/00), 774 So.2d 232, the court stated (internal citations omitted):
The protections of Miranda are only applicable when a person is the subject of a custodial interrogation. A suspect is "in custody" for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest.
State v. Watson, 774 So.2d at 242.
In the instant case, Detective Lloyd testified at the hearing on the motion to suppress that the investigation was based on information received from a confidential informant. He further testified that the confidential informant had provided information in the past that had led to arrests and convictions. Detective Zemlik testified at trial that he and other officers had received information from a confidential informant in reference to drug activity at the Bon Soir Motel, Room Number 59, in Westwego, which involved a subject by the name of "Tony" and a white Pontiac Grand Am rental car. Detective Zemlik testified that he and his partner went to the Bon Soir Motel near Room 59 and located a white Pontiac Grand Am with a rental plate on it, and that it was the only vehicle in the parking lot that matched that description.
A short time later, Detective Zemlik learned that the Pontiac Grand Am would be en route to McDonald's at 1212 Stumpf Boulevard in Gretna with a large amount of cocaine. Upon learning this information, Detective Zemlik and other officers immediately set up surveillance at that location and waited for the vehicle to arrive. Detective Zemlik testified that he received the information at approximately 3:30 p.m. and, at approximately 4:02 p.m., the vehicle had arrived at the parking lot. Once the vehicle pulled into the parking lot, the officers approached the vehicle, identified themselves as police officers, and had the occupants exit the vehicle.
Detective Lloyd went to the passenger side and removed defendant from the vehicle. He spoke to defendant and advised her of the ongoing narcotics investigation. Detective Lloyd conducted a pat-down search of defendant looking for weapons, but he didn't find any. He advised her of her rights, and she stated that she understood those rights. Defendant was advised that a female would be called to the scene to conduct a more thorough search. Defendant then removed a large bag of off-white rocks from her bra, handed it to Detective Lloyd, and said, "He told me to hold this. I don't know what's going on." When she said "he," she was looking at Mr. Roberson. The defendant and Mr. Roberson were then placed under arrest and transported to the Gretna Police Department and then to the Correctional Center.
The record reflects that the tip from the confidential informant contained predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. State v. Williams, 735 So.2d at 70-71. *803 Because the information given to the officers by the confidential informant in the instant case was sufficiently corroborated by the information gained by the officers in the surveillance, the officers had reasonable suspicion to make the investigatory stop. The confidential informant told the police that an unnamed person driving a white Pontiac Grand Am rental car would be delivering cocaine to McDonald's at 1212 Stumpf Boulevard in Gretna. When the officers observed a vehicle fitting that description at the location approximately one-half hour after obtaining the tip, the information was corroborated. Based on the foregoing, we conclude that the confidential informant's tip was sufficient to establish reasonable suspicion to justify the initial stop.
Further, we conclude that the defendant was arrested after she produced the drugs and thus, sufficient probable cause existed to arrest the defendant. Once she was removed from the vehicle, the defendant was given her Miranda rights but was not placed under arrest. She then voluntarily handed over the drugs to Detective Lloyd. Thereafter, she was formally placed under arrest by the detective. Since she was not arrested until after she produced the drugs, probable cause existed for her arrest.
The informant's tip was sufficient to establish reasonable suspicion to conduct a stop and there was sufficient probable cause for an arrest. Therefore, based on the above, the trial court's denial of the motion to suppress must be affirmed.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the trial court erred in permitting Detective Lloyd to testify concerning the amount of cocaine relative to personal use and the street price of cocaine without first qualifying him as an expert in his specialized field or expertise. He further argues that this testimony was outside of Detective Lloyd's training and experience.
Detective Lloyd testified at trial that he had been with the Gretna Police Department for 19 years, and that 13 of those years were with the narcotics section. He stated that, during that time, he had occasion to make undercover buys and that he had participated in hundreds of narcotics investigations. Detective Lloyd further testified that he had gone to numerous schools sponsored by the United States Government for narcotics identification, undercover operations and narcotics testing. Detective Lloyd then testified that he would characterize the drugs found on defendant as a large amount of drugs, and that they were not for personal use. Defendant did not object to that testimony. The state then asked Detective Lloyd what the street value for those drugs would be. Defense counsel then objected, arguing speculation. The trial court overruled the objection, stating that the foundation was laid, and allowed the state to proceed. Detective Lloyd then testified that the street value for one ounce or 28 grams of cocaine was approximately $1,000.00 to $1,400.00.
Defendant was ultimately convicted of possession of cocaine. On appeal, defendant complains that the trial court erred by allowing Detective Lloyd to testify regarding the amount of cocaine relative to personal use and the street value of cocaine when he was not qualified as an expert witness.
The state laid a proper foundation prior to asking Detective Lloyd questions regarding the amount of cocaine relative to personal use and the street value of cocaine. Detective Lloyd stated that he had occasion to make undercover buys and that *804 he had participated in hundreds of narcotics investigations. Detective Lloyd further testified that he had gone to numerous schools sponsored by the United States Government for narcotics identification, undercover operations and narcotics testing. We find that Detective Lloyd had the training and experience necessary to testify regarding those matters
We find that Detective Lloyd testified regarding matters that were within his personal knowledge and experience as a narcotics officer. Moreover, the price of the cocaine is not an element of the crime under the statute. Therefore, we find that the trial court did not err in allowing this testimony.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant argues that, during cross-examination, the trial court, over the objection of defense counsel, permitted the assistant district attorney to improperly question defendant concerning an alleged other crime in violation of LSA-C.Cr.P. Article 770.
During cross-examination of defendant, the state asked defendant:
Q. You didn't have time to go with your buddy Roberson and already sell an ounce of cocaine giving him a bunch of cash to put in his pocket and then ride onto some place else and sell another ounce or so, did you?
Defense counsel objected without giving reasons, and the trial judge overruled the objection. Defense counsel did not move for a mistrial nor did he ask for an admonition. A short time later, the following exchange occurred:
THE STATE:
Q. So at 3:10 you leave and you don't go pick up dope and you don't go sell an ounce of dope so Roberson has $1,000 in his pocket but instead you go to Big Lots; is that right?
DEFENDANT:
A. Yes.
Defense counsel did not object to this question, nor did he move for a mistrial or ask for an admonition.
LSA-C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense;
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The defendant argues that the trial court erred by allowing the state to elicit inadmissible other crimes evidence when it asked defendant whether she and Roberson were selling drugs prior to being stopped by the police at McDonald's. This evidence was irrelevant to the crime with which defendant was charged, possession of cocaine.
An improper reference to other crimes evidence is subject to the harmless error rule. State v. Charles, 00-1586 (La. App. 5 Cir. 6/27/01), 790 So.2d 705, 709; State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852, writ denied, *805 99-1785 (La.11/24/99), 750 So.2d 980 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102).
The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. State v. Johnson, 664 So.2d at 101. Detective Lloyd testified that after he advised defendant of her rights and told her a female officer would be called to the scene to conduct a more thorough search, defendant removed a large bag of off-white rocks from her bra, handed it to Detective Lloyd, and informed him that Mr. Roberson had told her to hold it. Further, Edgar M. Dunn, a forensic chemist for the Jefferson Parish Sheriff's Office, testified at trial that the bag contained a substance which tested positive for cocaine. Therefore, the verdict was amply supported by other testimony and evidence adduced at trial. We find that any error which may have been committed in this case by the introduction of the other crimes evidence was harmless.

ERROR PATENT REVIEW
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
Therefore, for the above reasons, we affirm the trial court's denial of the defendant's motion to suppress and affirm the defendant's conviction of possession of cocaine.
AFFIRMED.