857 So.2d 1209 (2003)
STATE of Louisiana
v.
Thurman T. COOLEY III and Paul Franklin.
No. 03-KA-418.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2003.
*1211 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Churita Hansell, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
*1212 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant Thurman T. Cooley, III.
Gwendolyn K. Brown, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant, Paul Franklin.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Defendants, Thurman T. Cooley III (Cooley) and Paul Franklin (Franklin), entered guilty pleas, under State v. Crosby, 338 So.2d 584 (La.1976), to various counts of possession with intent to distribute heroin, conspiracy to possess heroin, felon in possession of a firearm, as outlined below. They also pleaded guilty to multiple offender bills and were both found to be second felony offenders, and having waived sentencing delays, were duly sentenced. On appeal, they assign the following Assignments of Error:
ASSIGNMENTS OF ERROR (THURMAN T. COOLEY III)
1. The Trial Court erred by failing to suppress evidence gathered as a result of an illegal seizure.
2. The Trial Court erred by not severing the defendants.
3. Error patent was committed in the sentencing.
ASSIGNMENTS OF ERROR (PAUL FRANKLIN)
1. The trial court erred by failing to suppress evidence gathered as the result of an illegal seizure.
2. The trial court erred by failing to specify which conviction was being enhanced pursuant to the habitual offender adjudication.
PROCEDURAL HISTORY
On April 26, 2002, the Jefferson Parish District Attorney filed a Bill of Information charging defendant, Cooley, with Count 1, being a convicted felon in possession of a firearm in violation of LSA-R.S. 14:95.1. In the same Bill of Information, defendant, Franklin, was charged with Count 2, being a convicted felon in possession of a firearm in violation of LSA-R.S. 14:95.1; Count 3, possession with intent to distribute 28 to 200 grams of heroin in violation of LSA-R.S. 40:966(A)(1)(D)(a); and Count 4, possession with intent to distribute heroin in violation of LSA-R.S. 40:966(A).
On July 8, 2002, the Bill of Information was amended to charge defendant, Cooley, with Count 4, possession with intent to distribute heroin in violation of LSA-R.S. 40:966(A); and Count 5, conspiracy to distribute heroin in violation of LSA-R.S. 40:979 and R.S. 40:966.
Defendant, Cooley, filed a Motion to Sever, which was denied on August 22, 2002. Both defendants filed Motions to Suppress Evidence and Statement, which were denied on September 20, 2002. On November 19, 2002, a jury was selected and sworn. Also on that date, defendant, Franklin, requested an opportunity to enter pleas of guilty to all counts under Crosby,[1] reserving his right to appeal the ruling on the Motion to Suppress.
On the next day, November 20, 2002, defendant, Cooley, withdrew his pleas of not guilty and entered pleas of guilty under Crosby to the crimes with which he was charged. The trial court sentenced Cooley to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 14:95.1 conviction (Count *1213 1), 15 years in connection with the R.S. 40:966(A) conviction (Count 4), and 15 years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 40:979/40:966 conspiracy conviction (Count 5), with all sentences to run concurrently.
On that same date, the State filed a multiple bill alleging Cooley to be a second felony offender. Cooley admitted the allegations of the multiple bill. The trial court vacated the sentence imposed in connection with the R.S. 40:966(A) conviction and sentenced Cooley to imprisonment at hard labor for 15 years to run concurrently with the other sentences imposed.
On November 20, 2002, defendant, Franklin, withdrew his pleas of not guilty and entered pleas of guilty under Crosby to the crimes with which he was charged. The trial court sentenced Franklin to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 14:95.1 conviction (Count 2), 20 years in connection with the R.S. 40:966(A)(1)(D)(a) conviction (Count 3), and 20 years in connection with the R.S. 40:966(A) conviction (Count 4), with all sentences to run concurrently.
On that same date, the State filed a multiple bill alleging Franklin to be a second felony offender. Defendant admitted the allegations of the multiple bill. The trial court vacated the sentence imposed in connection with the R.S. 40:966(A) conviction and sentenced defendant to imprisonment at hard labor for 20 years to run concurrently with the other sentences imposed.
Both defendants timely appealed.
FACTS
Given that both defendants pleaded guilty, the following facts are gleaned from the transcript of the hearing on the Motions to Suppress Evidence.
Detective Robert Gerdes testified that he was employed in the narcotics section of the Jefferson Parish Sheriff's Office. He testified that he received information from a reliable confidential informant (CI) that Cooley, who resided at 1629 Cooper Road, Apartment D, would be delivering a quantity of heroin to the convenience store located at 123 Terry Parkway on March 26, 2002, between 11:30 p.m. and 12:00 a.m. Detective Gerdes testified that he had obtained reliable information from the CI in the past, and that that information had led to an arrest and a conviction.
The detectives established surveillance on Apartment D at approximately 11:25 p.m. Detective Gerdes explained that Detective Corey Wilson observed a red sport utility vehicle (SUV) pull up into the driveway. He stated that Detective Wilson also observed a young female, who was later identified as Tiara Gable, and Franklin exit the vehicle and enter Apartment D. Once Detective Wilson observed Cooley and Franklin[2] exit the apartment and get into the vehicle, Detective Gerdes followed the vehicle from Cooper Road to 123 Terry Parkway during the specific time frame laid out by the CI. Because the information from the CI was corroborated, Detective Gerdes conducted an investigatory stop of the vehicle in the parking lot.
Detective Gerdes stated that he pulled his vehicle directly behind the red SUV and exited. As the detectives approached the driver's side, Detective Richard Valley observed Franklin ingest a plastic bag containing *1214 a powder. The detectives were eventually able to arrest Franklin and retrieve the plastic bag he attempted to swallow, which was found to be seven grams of heroin. The detectives advised him of his constitutional rights. Detective Gerdes testified that Sergeant Harrison had contact with Cooley, who was an occupant inside the vehicle. Sergeant Harrison placed Cooley under arrest for an outstanding attachment of which they were already aware.
During questioning, Franklin stated that he lived in Algiers, the address on his driver's license. After being informed that detectives would corroborate that address, Franklin stated that he lived with his mother on Juliette Street in New Orleans. Franklin said he picked Cooley up at a graveyard in Gretna, and denied ever being at Cooley's residence or knowing where Cooley lived. Detective Gerdes testified that it was obvious Franklin was not being truthful, so they terminated the conversation with him.
Detective Gerdes testified that the young female inside Cooley's residence was Franklin's stepdaughter, Tiara Gable, who told them that she lived at 500 Wall Boulevard, Apartment 145, with her mother, Angela Mayo, and Franklin. She told them that she had just left the residence to go to Cooley's house. She denied making any other stops between her residence and Cooley's residence.
Detective Gerdes testified that they eventually executed a search warrant for and searched Franklin's apartment on Wall Boulevard. He testified that he seized a tin canister containing a Tenida scale, several clear plastic bags with the corners missing, miscellaneous paperwork in the name of Paul Franklin, one King Cobra .357 Magnum, serial number KAO860, two compressed objects of light brown powder contained within a plastic wrapping, one bottle of seven star superior lactose monohydrate powder, miscellaneous paperwork in the name of Angela T. Mayo, and one photograph. Detective Gerdes did not search Cooley's residence, but he was there during that search.
Detective Gerdes questioned Cooley after informing him of his rights. He testified that Cooley consented to a search of his apartment. When asked if he had any additional contraband inside the residence, Cooley stated that he did not have any more marijuana other than that which was located inside the vehicle at the scene. Detective Gerdes testified that Cooley admitted to having a gun inside his residence that he believed was stolen. He filled out the Waiver of Rights form and the Consent to Search form for Cooley. Cooley said he understood his constitutional rights, and he signed and initialed the rights of arrestee form. Detective Gerdes also signed the form.
Cooley then stated he did not waive his rights and wanted to speak to a lawyer, so the detectives stopped questioning him. Detective Gerdes testified that Cooley made the statement about the gun before the detectives advised him of his rights, but Cooley said he would still allow the detectives to search his residence. Cooley signed the Consent to Search form. Detective Gerdes completed the Consent to Search form and Sergeant Harrison signed as a witness. Detective Gerdes testified that Cooley's name did not appear on the carbon copy of the Consent to Search form, but that it appeared on the original, which was submitted with the report.
On cross-examination, Detective Gerdes testified that his CI identified Cooley from a photograph prior to the incident. Detective Gerdes did not recall whether the CI gave him a physical description of Cooley before he was shown the photograph. Detective Gerdes testified that the CI was *1215 present at the scene of arrest, and that the CI pointed out Cooley while Cooley was sitting in the SUV. The CI stated that he had known him "for awhile" and that he had made previous purchases of heroin from Cooley.
Cooley did not have any heroin on him when he arrested him. Detective Gerdes did not find any heroin in the SUV where Cooley was sitting; the heroin was retrieved from Franklin's mouth. Heroin was not found in Cooley's apartment. Cooley stated that he lived in the apartment with his brother. When the detectives searched the residence, they limited the search to the common areas and to Cooley's bedroom.
Sergeant Bruce Harrison of the Jefferson Parish Sheriff's Office narcotics section also participated in the surveillance and arrests. It was he who placed Cooley under arrest and found a small bag containing 1.2 grams of marijuana where Cooley had been sitting. Sergeant Harrison advised Cooley he was under arrest for possession of marijuana and advised him of his constitutional rights, which Cooley indicated he understood. Cooley told Sergeant Harrison the marijuana belonged to him, but that he did not know anything about any other drugs.
Sergeant Harrison explained that he himself seized from Cooley's residence a Jennings .380 semi-automatic hand gun, two magazines for that weapon, ammunition, two pagers, and a letter addressed to Cooley.
Sergeant Harrison was present during the search of Franklin's apartment on Wall Boulevard. At that point, Franklin, who was present, indicated he wished to give a statement. Sergeant Harrison testified that Franklin had been advised of his rights several times during the night. Franklin said he understood his rights and waived them, and he signed the form verifying that. The statement was recorded.
After the hearing, the trial judge denied the Motions to Suppress.
ASSIGNMENT OF ERROR NUMBER ONE (THURMAN T. COOLEY III)
The Trial Court erred by failing to suppress evidence gathered as the result of an illegal seizure.
ASSIGNMENT OF ERROR NUMBER ONE (PAUL FRANKLIN)
The trial court erred by failing to suppress evidence gathered as the result of an illegal seizure.
DISCUSSION
Defendants both argue that the trial court erred by failing to suppress evidence gathered as a result of an illegal search and seizure.
Both defendants contend that the initial stop was illegal, because: (1) the police did not articulate a reasonable suspicion to justify the stop; (2) the confidential informant (CI) provided no details other than where Cooley lived and that he would be leaving his apartment around midnight to go to the convenience store; (3) there could have been many innocent reasons for Cooley leaving at this time and going to the store; (4) the CI did not provide a physical description of Cooley; he only identified him from a photograph; (5) there was no indication the CI was reliable; in fact, there was a question as to whether any information he had provided resulted in a conviction; (6) the CI did not mention Franklin; and (7) no heroin was found on Cooley. The State responds that the police had reasonable suspicion to conduct an investigatory stop, and that the resulting evidence was lawfully obtained.
Cooley also argues that he did not waive his rights and consent to the search of his apartment, that it was inconceivable that he would consent to the search when he *1216 knew the police would find a gun and some ammunition, that his signature did not appear on the copy of the Consent to Search form, that the officers gave him the Consent to Search form to sign before the Rights of Arrestee form, and that he may have thought he was signing something else. The State responds that Cooley voluntarily consented to the search and executed a written Consent to Search form attesting to same.
INVESTIGATORY STOP
Defendants argue that the officers did not articulate a reasonable suspicion to justify the investigatory stop and, therefore, all evidence discovered as a result of this unlawful stop was "fruit of the poisonous tree," which should have been suppressed.
The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's decision to deny a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[3]
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as State and Federal jurisprudence.[4] The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity.[5] "Reasonable suspicion" is determined under the facts and circumstances of each case by looking at whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference.[6]
The officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity" and must be able to articulate the specific facts upon which his suspicion is based.[7] In order to determine whether reasonable suspicion exists, the totality of the circumstances, "the whole picture," must be considered.[8]
An informant's tip can provide a police officer with reasonable cause to detain and question a suspect.[9] However, an unverified tip alone might not be sufficient to establish reasonable cause for the stop of the defendant. The Supreme Court has held that such a tip, when corroborated by independent police work, may exhibit sufficient indicia of reliability to justify stopping the suspects.[10]
*1217 In a similar case cited by the State, State v. Jackson, 02-146 (La.App. 5 Cir. 5/29/02), 820 So.2d 1147, the CI provided the police with a specific address, as well as the make, color, model, and license plate number of defendant's vehicle. The surveillance set up by police verified all of the specific information provided by the informant. Based on the corroboration of the specific information provided by the CI, the court found that the officers had reasonable suspicion to justify an investigatory stop.
Likewise, in State v. Nelson, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627, the detective testified that he received information from a CI in reference to drug activity at the Bon Soir Motel, Room Number 59, in Westwego, which involved a subject named "Tony" and a white Pontiac Grand Am rental car. This Court stated that, because the information given to the officers by the CI was sufficiently corroborated by the information gained by the officers in surveillance, the officers had reasonable suspicion to make the investigatory stop.
However, in State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-599 (La.4/7/00), 759 So.2d 765, this Court determined the information received from a confidential informant was insufficient to establish reasonable suspicion to stop the vehicle in which defendant was riding. A DEA agent learned that a large quantity of heroin was to be delivered by one of the residents of the address. The police set up surveillance and observed two individuals, including defendant, exit the apartment, enter a vehicle, and leave the premises. The police did not observe a delivery. The police learned the vehicle was registered to a person at the address. The police subsequently stopped the vehicle. The vehicle had not committed any traffic violations and did not exhibit any suspicious activity before it was stopped. Upon being stopped, the driver fled on foot and the passenger, defendant, threw a black plastic bag out of the window that later tested positive for heroin. Defendant was arrested and a search warrant was obtained for the apartment, where heroin was found.
This Court found the informant's tip to be "painfully lacking in specificity" and "sparse at best." This Court stated that the tip did not provide a range of specific details that could be corroborated by the officers and amounted to little more than an address. This Court noted that no information was provided to establish the veracity, reliability, or basis of knowledge of the informant and the officer did not know when the informant's tip was received. Further, the informant's tip "did not describe a particular person, by name or description, a particular vehicle, by make, color, or license number, or a particular place where the vehicle would go." Id. at 18. The tip also did not specify whether the delivery of the heroin was to be delivered to or from the apartment. This Court concluded that the State did not meet its burden of proof because there was no showing made of the reliability of the informant and the limited specificity of the information in the tip was insufficient to provide reasonable suspicion to justify the initial stop of the vehicle.
The present case is more similar to Jackson and Nelson than to Rodriguez. The informant's tip was more specific than the tip in Rodriguez and similar to the tips in Jackson and Nelson. Unlike the police in Rodriguez and Nelson, Detective Gerdes knew what time the predicted delivery was to take place (between 11:30 p.m. and 12:00 a.m. on March 26, 2002). Unlike the informant in Rodriguez, the informant in the present case gave the *1218 specific name of "Cooley" and identified Cooley from a photograph and at the scene prior to the arrest. Although the informant specified that Cooley would be delivering the drugs, the detectives did not testify that they had received any information regarding the type of vehicle that would be involved in the delivery.[11] In both Jackson and Nelson, the informants described the vehicle involved. Additionally, unlike Rodriguez and like Jackson and Nelson, there was testimony regarding the past reliability of the informant. In Rodriguez, there was no testimony regarding the informant's reliability. In Nelson, there was clear testimony that the informant had provided information in the past that led to arrests and convictions. In Jackson, there was testimony that the informant was credible and reliable.
In light of the foregoing, we find that the officers had reasonable suspicion to justify an investigatory stop of the defendants. The surveillance set up by Detective Gerdes verified all of the specific information provided by the informant, previously found to be reliable by Detective Gerdes, which contained predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs.[12] Based on the corroboration by the officers of the specific information provided by the informant, we find that the officers had reasonable suspicion to justify an investigatory stop, and that the trial court did not err in denying the Motions to Suppress.
Defendants point out that the CI did not mention Franklin in the information he provided to police. Although that is true, it is irrelevant to the issue of whether there was reasonable suspicion to conduct an investigatory stop. It is well-settled in Federal and State jurisprudence that police officers may seize contraband detected during the lawful execution of an investigatory stop.[13] Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.[14]
Having found that the investigatory stop was valid, Detectives Gerdes and Valley, therefore, had a right to be standing near the driver's side of the vehicle, where Valley observed Franklin attempt to ingest a plastic bag containing a powder, which was later identified as 7 grams of heroin. Based on the foregoing, the drugs Franklin attempted to ingest were legally seized under the "plain view" exception to the warrant requirement. The valid investigatory stop led the detectives to find heroin on Franklin's person. Additionally, a search warrant was issued for Franklin's *1219 residence[15] where heroin and a gun were found, which ultimately led to his being arrested and charged with drug and gun violations.
Defendants note that no heroin was found on Cooley. Whether heroin was found on Cooley's person is irrelevant to the issue of whether there was reasonable suspicion to conduct an investigatory stop. There is no requirement that the police find drugs in order for the stop to be considered valid.[16]
CONSENT TO SEARCH
Defendant, Cooley, argues that he did not waive his rights and consent to the search of his apartment.
In State v. Stone, 94-155 (La.App. 5 Cir. 7/26/94), 641 So.2d 652, 655, this Court set forth the law regarding searches conducted pursuant to consent:
... One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving the consent was given freely and voluntarily. (cite omitted) Voluntariness of defendant's consent to search is a question of fact to be determined by the trial judge from a review of the totality of the circumstances. (cite omitted.) Furthermore, the factual determinations of the trial court on the issue of a consent to search are entitled to great weight on appellate review. (cite omitted.) The trial court's determination as to the credibility of witnesses are to be accorded great weight on appeal. (cite omitted.)
In the instant case, Sergeant Harrison testified that he placed Cooley under arrest for an outstanding attachment. After the marijuana was found in the vehicle where Cooley was sitting, Sergeant Harrison arrested Cooley for possession of marijuana and advised him of his constitutional rights. Cooley indicated he understood his rights and told Sergeant Harrison that the marijuana was his.
Detective Gerdes testified that he asked Cooley if he would consent to a search of his apartment. Cooley stated, "Yes." Detective Gerdes filled out the Rights of Arrestee form and Consent to Search form for Cooley. Cooley signed the Rights of Arrestee form indicating he understood his rights, but he said he did not waive his rights and wanted to speak to a lawyer. Detective Gerdes testified that Cooley said he would still allow the detectives to search his residence. Detective Gerdes explained that he completed the Consent to Search form, that Cooley signed the form, and that Sergeant Harrison signed as a witness.
State's Exhibit 2 is entitled "Jefferson Parish Sheriff's Office Consent Search Form." The form provides in pertinent part:
I have been advised by De. R. Gerdes, an officer with the Jefferson Parish Sheriff's Office that the officer is investigating the crime of R.S. 40:966 relative to Poss. of Heroin & Marijuana. I have been advised of my constitutional rights not to have a search made without a search warrant and of my right to refuse to consent to such a search. I understand that whatever evidence is found can be used against me in a court of law, *1220 or used in connection with the investigation into the crime.
I hereby authorize members of the Jefferson Parish Sheriff's Office to conduct a complete search of 1629 Cooper Rd. Apt. D, Gretna. The officers are authorized by me to take from my premises/vehicle, herein specified, any letters, papers, material or other property which the officer may deem appropriate.
This written permission is being given by me to the above named officer voluntarily and without threats or promises of any kind.
(Underlining denotes handwritten material in the original.)
The signature "T. Cooley" appears at the bottom of the form on the right-hand side, and Sergeant Bruce Harrison's signature appears at the bottom of the form on the left-hand side. Cooley argues that his signature did not appear on the copy of the consent form. The record indicates that this is true. Detective Gerdes explained that he probably had the carbon paper upside down when he filled out the form. However, Detective Gerdes testified that Cooley's signature appeared on the original consent form that was submitted with the report.[17]
A review of the totality of the circumstances shows that Cooley freely and voluntarily consented to the search of his apartment. The evidence indicates that he told the officers they could still search his apartment and that he signed a Consent to Search form authorizing the officers to search his residence. Based on the foregoing, we find that defendant consented to a search of his apartment.
ASSIGNMENT OF ERROR NUMBER TWO (THURMAN T. COOLEY III)
Cooley argues that the trial court erred by denying his Motion to Sever the defendants. The State notes that Cooley's claim was not reserved for appeal. An unqualified guilty plea waives all non-jurisdictional defects in the proceedings prior thereto and precludes review thereof either by appeal or post-conviction relief.[18] Defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case.[19]
The transcript indicates that Cooley pled guilty under Crosby reserving his right to appeal the court's ruling on the Motion to Suppress. The Waiver of Rights form indicates only that defendant was entering a plea under Crosby. We find that Cooley specifically limited his Crosby appeal to the ruling on the Motion to Suppress. As such, he is precluded from raising this issue on appeal. State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196.
ASSIGNMENT OF ERROR NUMBER THREE (THURMAN T. COOLEY III)
Cooley argues that error patent was committed in the sentencing.
The State concurs that remand is appropriate so that a proper evaluation may be made as to the legality of the sentence and compliance with the applicable statutory sentencing provisions.
*1221 As was set forth in the procedural history, Cooley withdrew his pleas of not guilty and entered pleas of guilty under Crosby. The trial court sentenced Cooley to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 14:95.1 conviction (Count 1), 15 years in connection with the R.S. 40:966(A) conviction (Count 4), and 15 years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 40:979/40:966 conspiracy conviction (Count 5), with all sentences to run concurrently. On that same date, the State filed a multiple bill alleging Cooley to be a second felony offender. Cooley admitted the allegations of the multiple bill.
Only one count of a multicount indictment/information can be used to enhance the penalty pursuant to La. R.S. 15:529.1 when the convictions were entered on the same day.[20] It is required that a defendant receive a determinate sentence for each offense upon which he is convicted. Id.
The transcript reflects that the trial judge, while speaking to both defendants and their counsel, vacated "the sentence imposed in connection with each count on 40:966(A)." Because Cooley was convicted of violations of R.S. 14:95.1 (Count 1), R.S. 40:966(A) (Count 4), and R.S. 40:979/40:966 (Count 5), it is unclear whether the trial judge was vacating the sentence on Count 4 or Count 5. We hereby vacate the sentence on the multiple bill pertaining to Cooley and remand for resentencing on the multiple bill.
Regarding errors patent, the following are noted.[21] The commitments are not consistent with the transcript in several respects. The commitment pertaining to Cooley indicates that Cooley pled guilty to distribution with intent to distribute heroin. The commitment should read that defendant pled guilty to possession with intent to distribute heroin.
The commitment pertaining to Cooley notes that "the court ordered that the sentence as to count 3-40:979/966 is to be served without benefits of parole, probation or suspension of sentence." However, the court, in fact, ordered Count 5 to be served without benefit of parole, probation or suspension of sentence.
When there exists a conflict between the transcript and the commitment, the transcript controls. State v. Lynch, 441 So.2d 732 (La.1983). Therefore, we remand to the trial court for the purpose of correcting the commitments to conform to the transcript, designating the proper offenses to which defendants pled guilty and the proper sentences. State v. Gassenberger, 02-658 (La.App. 5 Cir. 12/11/02), 836 So.2d 271, 274.
Finally, the transcript indicates that the trial judge advised defendants that they had a two-year time period in which to seek post-conviction relief. The Waiver of Rights forms indicate that defendants were advised that they had two years "from today's date" to seek post-conviction relief.[22]
*1222 Although the trial judge informed defendants of the two-year prescriptive period for seeking post-conviction relief, she did not tell them when this period began to run. This notice was, therefore, incomplete. Therefore, we remand to the District Court with instructions to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.[23]
ASSIGNMENT OF ERROR NUMBER TWO (PAUL FRANKLIN)
The trial court erred by failing to specify which conviction was being enhanced pursuant to the habitual offender adjudication.
Franklin withdrew his pleas of not guilty and entered pleas of guilty under Crosby to the crimes with which he was charged. The trial court sentenced Franklin to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence in connection with the R.S. 14:95.1 conviction (Count 2), 20 years in connection with the R.S. 40:966(A)(1)(D)(a) conviction (Count 3), and 20 years in connection with the R.S. 40:966(A) conviction (Count 4), with all sentences to run concurrently. On that same date, the State filed a multiple bill alleging Franklin to be a second felony offender. Defendant admitted the allegations of the multiple bill.
With respect to Franklin, the transcript indicates that the trial judge vacated the sentence imposed "in connection with the 966(A)." Because Franklin was convicted of violating R.S. 40:966(A)(1)(D)(a) (Count 3) and R.S. 40:966(A) (Count 4), we find that the trial judge did not clearly specify which sentence was vacated and which count she sought to enhance. It is noted that the State refers to R.S. 40:966(A)(1)(D) and R.S. 40:966(A)(1)(D)(a) in the multiple bill as the basis for the enhancement. However, the trial judge did not specifically reference that statute during sentencing. Further, the commitment does not indicate which sentence the trial judge vacated. Based on the foregoing, we vacate the multiple offender sentence pertaining to Franklin and remand for resentencing.
The commitments are not consistent with the transcript in several respects. The commitment pertaining to Franklin indicates that Franklin pled guilty to distribution with intent to distribute heroin. The commitment should read that defendant pled guilty to possession with intent to distribute heroin.
The commitment pertaining to Franklin provides that, "the above sentence is to be served without benefits of parole, probation or suspension of sentence." However, above that sentence is the statement, "The Court sentenced the Defendant to imprisonment at hard labor for a term of 20 years." Above that statement is a list of Counts 2, 3, and 4 with the sentences 10 years, 20 years, and 20 years written next to those counts, respectively. It is unclear looking at the commitment which sentence the trial judge imposed without benefits. However, after reading the transcript, it is clear that the trial judge imposed the ten-year sentence on Count 2 without benefits.
When there exists a conflict between the transcript and the commitment, the transcript controls. State v. Lynch, 441 So.2d 732 (La.1983). we remand to the *1223 trial court for the purpose of correcting the commitments to conform to the transcript, designating the proper offenses to which defendants pled guilty and the proper sentences. State v. Gassenberger, 02-658 (La.App. 5 Cir. 12/11/02), 836 So.2d 271, 274.
Finally, the transcript indicates that the trial judge advised defendants that they had a two-year time period in which to seek post-conviction relief. The Waiver of Rights forms indicate that defendants were advised that they had two years "from today's date" to seek post-conviction relief.[24]
Although the trial judge informed defendants of the two-year prescriptive period for seeking post-conviction relief, she did not tell them when this period began to run. This notice was, therefore, incomplete. Therefore, we remand to the District Court with instructions to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.[25]
Accordingly, the defendants' convictions are affirmed. Cooley's sentence as a multiple offender is vacated and the matter remanded for resentencing in accordance with this opinion. Likewise, Franklin's sentence as a multiple offender is vacated and the matter remanded for resentencing in accordance with this opinion.
CONVICTIONS AFFIRMED; MULTIPLE OFFENDER SENTENCES VACATED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] The deputy testified that Gable, Franklin's 15 year old stepdaughter, remained behind at Cooley's apartment.
[3] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[5] State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302.
[6] State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
[7] State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[8] State v. Kalie, 96-2650 at p. 2, 699 So.2d at 879.
[9] Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Jernigan, 377 So.2d 1222, 1224 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980). State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299.
[10] Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).
[11] The probable cause affidavit in the record indicates that the detectives received information from an informant regarding a drug delivery to take place at a specific time and involving a specific vehicle, but did not mention the make, model, color, or license plate number of that vehicle. It is noted, however, that the probable cause affidavit was not introduced into evidence.
[12] State v. Jackson, 02-146 (La.App. 5 Cir. 5/29/02), 820 So.2d 1147, 1151; State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 799, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627 (citing State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118).
[13] See, Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
[14] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 72, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118 (citations omitted).
[15] Defendants do not challenge the validity of the search warrant or the fact that heroin was discovered in Franklin's residence. They only challenge the fact that the CI did not mention Franklin.
[16] LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[17] The carbon copy of the consent form was not introduced as an exhibit and, therefore, it is not contained in the evidence envelope. The only consent form contained in the evidence envelope is State's Exhibit 2 that contains Cooley's signature at the bottom.
[18] State v. Raines, 00-1942, p. 3 (La.App. 5 Cir. 5/30/01), 788 So.2d 630, 632; State v. Crosby, 338 So.2d 584, 588 (La.1976).
[19] State v. Cox, 02-0333, p. 5 (La.App. 5 Cir. 9/30/02), 829 So.2d 521, 523-524.
[20] State v. Fish, 00-922 (La.App. 5 Cir. 1/30/01), 782 So.2d 1087, 1092, writ denied, 01-548 (La.2/1/02), 808 So.2d 337.
[21] The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[22] The commitments indicate that defendants were advised they had two years after judgment of conviction and sentence has become final in which to seek post-conviction relief. The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[23] State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975, writ denied, 01-1719 (La.4/12/02), 812 So.2d 666.
[24] The commitments indicate that defendants were advised they had two years after judgment of conviction and sentence has become final in which to seek post-conviction relief. The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[25] State v. George, 99-887 (La.App. 5. Cir. 1/4/00), 751 So.2d 973, 975, writ denied, 01-1719 (La.4/12/02), 812 So.2d 666.